IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TERRY L.S. DORSEY #193579             *

    Plaintiff,                              *

v                                    *     Civil Action No. GLR-15-3645

WARDEN BOBBY P. SHEARIN              *
WARDEN FRANK BISHOP, JR.
CHAPLAIN KEVIN LAMP                  *

    Defendants.                             *
                              ***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants', Defendants Warden Bobby P. Shearin, Warden Frank Bishop, Jr, and Chaplain Kevin Lamp, Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 17).  The Motion is ripe for disposition. Having reviewed the Motions and supporting documents, the Court finds no hearing necessary. See Local Rule 105.6 (D.Md. 2016).  For the reasons outlined below, the Court will deny Defendants' Motion.

## I.    BACKGROUND[1]

Plaintiff Terry L.S. Dorsey is an inmate at North Branch Correctional Institution ("NBCI").  Beginning in March of 2013, Dorsey asked Kevin Lamp, Chaplain at NCBI, at least two times about Native American religious services.  (Compl. at 2, ECF No. 1).  Dorsey learned that Defendant Shearin, who was then Warden at NBCI, would not permit Native American services at NBCI because of their use of ceremonial tobacco.  (Id.).  Dorsey also learned that

---

[1] Unless otherwise noted, the facts outlined here are set forth in Dorsey's Complaint (Compl., ECF No. 1).  To the extent the Court discusses facts that Dorsey does not allege in his Complaint, they are uncontroverted and the Court views them in the light most favorable to Dorsey.  The Court will address additional facts when discussing applicable law.

eight people were needed for a group.  (Id.).

Dorsey filed Administrative Remedy Procedure ("ARP") request No. NBCI-1558-13 asking for Native American Worship Services at NBCI, which Shearin denied.  (Id. at 6).  On July 15, 2013, Dorsey appealed Shearin's decision to the Commissioner of the Division of Correction, who found his appeal meritorious, and instructed Shearin to adequately accommodate the religious requirements of the Native American Faith Group.  (ECF No. 24-1 at 4, 5–6).  On August 28, 2014, Dorsey filed a grievance with the Inmate Grievance Office ("IGO") complaining that he was improperly classified as Maximum II security.  Administrative Law Judge ("ALJ") Georgia S. Brady held a hearing on May 20, 2015.  (ECF No. 24-1 at 19–39).

In a written decision dated August 31, 2015, ALJ Brady concluded that Dorsey's reclassification to Maximum II security status did not comply with DOC policy or with COMAR 12.02.24.04B and C or with COMAR 12.0207.03A or B.  (Id.).  The ALJ also found that violation of the policy and applicable regulations prejudiced Dorsey.  (Id. at 38–39).  The ALJ determined that as a matter of law, Dorsey did not have a liberty interest in avoiding assignment to Maximum II security status, and the DOC's reclassification process in this regard did not violate his rights to due process under the Fourteenth Amendment.  No damages or other relief arising from the reclassification decision was awarded.  Id.

On May 5 2015, Dorsey filed ARP NBCI 0886-15 complaining that he has not been able to attend religious services because he is classified as a Max II security inmate.  (ECF No. 24-1 at 17–18).  On July 10, 2015, the Warden denied the ARP as without merit, noting that Dorsey had been at NBCI for three years but in the general population for "a couple of days" due to his behavior.  (Id. at 17).

Case 1:15-cv-03645-GLR   Document 31   Filed 03/17/17   Page 3 of 11

In his Opposition, Dorsey argues that the Native American worship services provided at NBCI is based on Lakota tradition and does not offer him the opportunity to study his Blackfoot Native American beliefs. (Pl.'s Opp. at 3, ECF No. 24). Dorsey raised this concern in ARP NBCI-2424-15, which he filed on November 25, 2015, and was denied on January 22, 2016. (ECF No. 24-1 at 12; ECF No. 17-3 at 10). On March 31, 2016, his appeal was dismissed by the Commissioner who wrote: "Your claim that the volunteer group, Iron House Council, strictly practices the Lakota form of worship is inaccurate assessment. Iron House Council members are of various Native American tribes of which some are even of the Blackfoot tribe . . ." (ECF No. 24-1 at 11). The Commissioner's denial indicated that the group is afforded latitude to practice and study other tribes, and noted that Dorsey had failed to specify the differences between what was being practiced and his practice requirements. (Id.).

Defendant Lamp maintains that Native American religious worship requires congregate ceremonies to be held outdoors on sacred ground covered in grass. (Lamp Decl., ECF No. 24-2). Because there is little grassy area at NBCI and there is no outside area covered in grass far enough from secure areas, NBCI determined that no place was consistent with good security practices. (Id.). Lamp contacted Iron Horse Council, a volunteer group which assists in other DOC facilities, to hold services at NBCI. On May 27, 2014, the Council began conducting Native American services for general population inmates, and continues to do so on a bi-weekly basis. (Id.). Lamp attests that due to NBCI security concerns, religious congregate services are provided only to inmates in the general population. (Id.).

Defendants provided copies of Dorsey's housing records. Case Manager Randy Durst summarized this information in his Declaration. (ECF No. 17-4 at 1).

**March 17, 2017 to March 19, 2014,** Dorsey was in the general

3

prison population.

**March 19, 2014 to August 4, 2014,** Dorsey was placed in administrative segregation because there was reason to believe Dorsey had aided an assault on an inmate. ECF No. 17-4 at pp. 4-7.

**August 4, 2014 to September 26, 2014**, Dorsey was returned to the general prison population.

**September 26, 2014 to January 15, 2015,** Dorsey was placed on administrative segregation for security concerns.   ECF No. 17-4 at pp. 9-12.

**January 15, 2015 to February 6, 2015**,  Dorsey was placed in the general prison population.  ECF No. 17-4 at p. 1.

**February 6, 2015 to April 30, 2015**, Dorsey was placed on administrative segregation for security concerns and pending investigation.   There was reason to believe that Dorsey had attempted to incite other inmates to join in assaulting a female staff member and another inmate.  ECF No. 17-4 at pp. 14-16.

**April 30, 2015 to January 9, 2016**, Dorsey returned to the general prison population.  ECF No. 17-4 at p. 1.

**January 9, 2016**, Dorsey was placed on disciplinary segregation for possession of contraband (fermented juice) and other violations.  He was found guilty and sanctioned with 90 days of disciplinary segregation. ECF 17-4 at pp. 16-35.

Dorsey was issued passes to attend Native American worship on August 26 2014; September 2, 9, 16, and 23, 2014; November 3, 10, 17, and 24, 2015; and December 1, 8, 22, 29, 2015.  ECF No. 17-3 at pp. 12-21.  Defendants do not state when Dorsey was reclassified to Maximum II status.

Dorsey sued Defendants under 42 U.S.C. § 1983 alleging they violated his right to practice religion under the Free Exercise Clause of the First Amendment and unlawfully retaliated against him under the First Amendment.

## II.      DISCUSSION

### A.      <u>Standard of Review</u>

In considering a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true.  See <u>Harrison v. Westinghouse Savannah River Co.</u>, 176 F.3d 776, 783 (4th Cir. 1999) (citing <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993)).  But "[w]hen matters outside the pleading are presented to and not excluded by the court, the [12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."  <u>Laughlin v. Metro. Wash. Airports Auth.</u>, 149 F.3d 253, 260–61 (4th Cir. 1998) (quoting Fed.R.Civ.P. 12(d)).  Under Rule 56(a), the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

In reviewing a motion for summary judgment, the Court must draw all justifiable inferences in the non-moving party's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986) (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158–59 (1970)).  Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87 (1986).  "[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson</u>, 477 U.S. at 247–48.

A "material fact" is one that might affect the outcome of a party's case.  <u>Id.</u> at 248; see <u>JKC Holding Co. v. Wash. Sports Ventures, Inc.</u>, 264 F.3d 459, 465 (4th Cir. 2001) (citing <u>Hooven-Lewis v. Caldera</u>, 249 F.3d 259, 265 (4th Cir. 2001)).  Whether a fact is considered to

be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644–45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (quoting Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir. 1993).

Defendants rely on exhibits attached to their Motion. Because the Court will consider Defendants' exhibits, the Court must convert the Motion to Dismiss to a Motion for Summary judgment.[2]

As a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Kipps v. Ewell, 538 F.2d 564, 566 (4th Cir. 1976). Here, Dorsey submits a Declaration which describes Defendants'

---

2 "[N]o formal notice of conversion by the district court is required in cases where it is apparent that what is nominally a Rule 12(b)(6) motion to dismiss is subject to conversion to a summary judgment motion—for example, where the motion is captioned in the alternative as a motion for summary judgment and affidavits are attached to the motion." Carter v. Balt. Cty., 39 F.App'x 930, 933 (4th Cir. 2002) (per curiam).

allegedly unconstitutional conduct based upon his own personal knowledge, and Dorsey swears the Declaration under the penalties of perjury. (ECF No. 24-1). Accordingly, the Court will consider it for purposes of determining whether he generates a dispute of material fact for his claims.

**B.     Analysis**

      **i.     Exhaustion of Administrative Remedies**

Defendants first argue Dorsey has not exhausted his Free Exercise claim nor his retaliation claim. Dorsey's ARP record shows that on August 27, 2014, Dorsey filed an ARP claiming his First Amendment rights were violated when he was placed on Max II status, preventing him from attending religious services. (ECF No. 17-3 at 8). Similarly, on May 5, 2015, Dorsey filed ARP NBCI-0886-15 complaining that he has not been able to attend religious services because he is classified as a Max II security inmate. (ECF No. 24-1 at 17–18). On January 1, 2016, Dorsey appealed ARP NBCI-2424-15 to the Commissioner of the Division of Correction asserting that NBCI retaliated against him by placing him in segregation. (Id. at 10). Defendants do not indicate whether Dorsey appealed his ARPs by filing a declaration from the Executive Director of the IGO, nor do they support their exhaustion argument with other verified exhibits. Because it is not undisputed that Dorsey failed to exhaust his administrative remedies, the Court will not grant Defendants' Motion. The Motion is subject to renewal within thirty days to provide the Court additional information regarding whether Dorsey has exhausted his administrative remedies.

      **ii.     First Amendment Retaliation Claim**

Dorsey brings a claim under the First Amendment to the Constitution's bar on retaliation. "Prison walls do not form a barrier separating prison inmates from the protections of the

Constitution." Turner v. Safley, 482 U.S. 78, 84 (1987).  A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment.  Mount Healthy City Sch. Dist. Bd. of Ed. v. Doyle, 429 U.S. 274, 287 (1977); Thaddeus-X v. Blatter, 175 F.3d 378, 388 (6th Cir. 1999) (en banc).  A retaliation claim has three elements: (1) the prisoner engaged in protected conduct; (2) the prisoner suffered an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the prisoner's protected conduct motivated the adverse action at least in part. See Thaddeus-X., 175 F.3d at 394.  In the prison context, a plaintiff must establish that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not narrowly tailored to achieve such goals.  See Rizzo v. Dawson, 778 F.2d 527, 532 & n.4 (9th Cir. 1985).

Here, while Defendants argue Dorsey's reclassification was premised on a legitimate security concern, the ALJ concluded that the reclassification did not comply with DOC policy and state regulations.  And while the reclassification itself may not have implicated a liberty interest, it precluded his attendance at congregate religious services that, if made with retaliatory animus, burdened his religious observance.  Thus, viewing the facts in the light most favorable to Dorsey, the Court concludes there is insufficient evidence on the record as to whether Dorsey demonstrated the elements of a First Amendment retaliation claim.  Accordingly, the Court will deny the Motion subject to renewal within thirty days.  The Motion is subject to renewal within thirty days to provide the Court additional information through declarations or other verified pleadings addressing the reasons for Dorsey's classification and their surrounding details, the date he was reclassified, and a list of the persons responsible for the reclassification.

      **iii.**      **First Amendment Free Exercise Claim**

Dorsey also alleges Defendants violated his rights under the Free Exercise Clause of the First Amendment to the United States Constitution.  Inmates "clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citation omitted); see also Morrison v. Garraghty, 239 F.3d 648, 656 (4th Cir. 2001) (stating that First Amendment protections "including its directive that no law shall prohibit the free exercise of religion, extends to the prison environment").  Thus, in the prison context, the Free Exercise Clause prohibits "policies that impose a substantial burden on a prisoner's right to practice his religion."  Wall v. Wade, 741 F.3d 494, 498 (4th Cir. 2014) (quotation omitted).  A substantial burden on religious exercise occurs when "a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs."  Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006).  Prison officials may restrict an inmate's religious practices, however, subject to a "reasonableness" test that accords substantial deference to the professional judgment of correctional officers.  See Overton v. Bazzetta, 539 U.S. 126, 132 (2003).

Defendants provide insufficient information for the Court to determine whether the restrictions on Dorsey's attendance are reasonable.  For example, the record does not explain why congregate services are available to prisoners at the Max I level, but not at the Max II level, and how the prison regulation restricting congregant services is reasonably related to legitimate penological interests.  There is also insufficient information about the Iron House Council's religious services and the religious tenets it encompasses.  Accordingly, the Court will deny the Motion subject to renewal within thirty days.  The Motion is subject to renewal within thirty days to provide the Court additional information addressing whether the restrictions on Dorsey's attendance are reasonable under the Free Exercise Clause.

      **iv.**      **Religious Land Use and Institutionalized Persons Act Claim**

Because Dorsey is proceeding pro se, liberally construing his Complaint, the Court has identified a possible claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a) (2000). The act provides in part that:

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

RLUIPA offers greater protections than the First Amendment: it precludes the government from imposing a "substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government demonstrates that the imposition of the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. §2000cc–1.  A prison regulation imposes a substantial burden when it forces a person to "choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand."  Lovelace 472 F.3d at 187 (4th Cir. 2006).  RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion."  Cutter, 544 U.S. at 718.

Here, neither party has addressed the merits of Dorsey's claim under RLUIPA. Accordingly, the Court will deny the Motion subject to renewal within thirty days.  The Motion is subject to renewal within thirty days to provide the Court additional information addressing Dorsey's claim under RLUIPA.

**III.    CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 17) is DENIED.  The Motion is subject to renewal within thirty days to provide the Court the additional information described above.  A separate Order follows.

Entered this 17th day of March, 2017.

_____/s/_____

George L. Russell, III
United States District Judge
